## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

Amanda Jones                                                    **Plaintiff**

v.                          **CASE NO. 3:13CV00155 JTR**

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                 **Defendant**

### ORDER AFFIRMING THE COMMISSIONER

Amanda Jones seeks judicial review of the denial of her application for

disability insurance benefits (DIB) and supplemental security income (SSI) benefits.

Jones last worked in 2005 as a farm helper.[1] Jones applied for DIB and SSI on

October 26, 2009, with an alleged onset date of May 1, 2000.[2][3] Jones's date last

insured (DLI) is June 30, 2007.[4] Jones bases disability on learning disability and

---

[1]SSA record at p. 243.

[2]*Id.* at p. 75.

[3]The Commissioner points out in her brief that throughout the decision the ALJ
misstates the alleged onset date as April 1, 2005. Jones does not make any arguments
regarding this error. "[T]he burden of showing that an error is harmful normally falls
upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S.
396, 409-10 (2009). Jones has presented nothing to the Court to establish harm, and
the Court cannot identify any harm from this error. No evidence was presented from
the time period between May 1, 2000, and April 1, 2005. The final determination
would be the same even if the ALJ identified the correct alleged onset date.

[4]SSA record at p. 131.

depression, and alleges no physical impairments.[5]

**The Commissioner's decision.** The Commissioner's ALJ determined that Jones engaged in substantial gainful activity during the period from the alleged onset date to the date last insured, specifically in the years 2004 and 2005 when Jones worked as a farm helper.[6] Jones had no medically determinable impairment prior to June 30, 2007.[7]

After June 30, 2007, evidence established that Jones has severe impairments - depression and borderline intellectual functioning.[8] The ALJ found that none of Jones's severe impairments meet the listings,[9] and she can perform the full range of work at all exertional levels but with the following non-exertional limitations: interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote, with few variables and little judgment; and supervision

---

[5]*Id.* at p. 121.

[6]*Id.* at p. 12.

[7]*Id.* at p. 13. Because the ALJ determined that there was no medically determinable impairment prior to the DLI, the analysis ended for DIB and continued only for SSI.

[8]SSA record at p. 13.

[9]*Id.* at pp. 13-15.

required is simple, direct and concrete.[10]  The ALJ held that Jones can perform past relevant work as a farm helper.[11]  In the alternative, the ALJ held that Jones can perform the positions of house cleaner and motel maid, positions identified by the vocational expert (VE) as available in the local, regional and national economies.[12] Jones's application was denied.[13]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[14] Jones filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15]

---

[10]*Id.* at pp. 15-20.

[11]*Id.* at p. 20.

[12]*Id.* at p. 21.

[13]*Id.*

[14]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**Jones's allegations.** Jones maintains that the decision of the ALJ is not supported by substantial evidence because (1) the record does not support the ALJ's determination that Jones's borderline intellectual functioning was not an impairment prior to the DLI; (2) the record does not support the ALJ's RFC determination; and (3) the ALJ did not include borderline intellectual functioning in the hypothetical posed to the VE. These arguments are not persuasive. The ALJ's decision is supported by substantial evidence and no legal error occurred.

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[16] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the ALJ's denial of benefits[17]

**Impairment prior to date last insured.**   Jones maintains that the ALJ erred in the determination that there was no medically determinable impairment, specifically borderline intellectual functioning, prior to the date last insured, June 30, 2007. According to Jones, borderline intellectual functioning is a lifelong impairment. Therefore, even absent medical records supporting a borderline intellectual

---

[16]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[17]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

functioning diagnosis prior to June 30, 2007, the impairment existed.

For support Jones cites to cases from the Fourth and Seventh circuits holding that mental retardation is a lifelong impairment,[18] and that IQs determined subsequent to the insured period can and should be assumed to be the same during the insured period.[19] Indeed, the Eighth Circuit has cited to these cases, stating "[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in claimant's intellectual functioning."[20]

Even if the ALJ should have assessed "borderline intellectual functioning" as one of Jones's Step 2 "severe" impairments for the time period prior to June 30, 2007, the issue is ultimately moot. In his decision, the ALJ documented his application of the psychiatric review technique and assessed Jones with mental limitations in her RFC.[21] The ALJ included those limitations, as well as "borderline intellectual functioning," in a hypothetical question to the VE.[22] For the reasons explained below,

---

[18]*Luckey v. U.S. Dep't of Health & Human Services*, 890 F.2d 666, 668-69 (4th Cir. 1989); *Guzman v. Bowen*, 801 F.2d 273, 274-75 (7th Cir. 1986); *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985).

[19]*Guzman*, 801 F.2d at 274-75; *Branham*, 775 F.2d at 1274.

[20]*Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001).

[21]SSA Record at pp. 13-20.

[22]SSA Record at pp. 255-256

the ALJ's mental RFC assessment is supported by substantial evidence and captured the consequences of her mental limitations. Under these circumstances, the ALJ's failure to find that "borderline intellectual functioning" was a "severe" impairment prior to June 30, 2007 does not warrant reversal.[23]

**RFC determination.** According to Jones, the ALJ's RFC determination is not supported by the record. Jones maintains that the additional limitations of "only simple instructions and simple tasks" should have been included. The ALJ's RFC determination is supported by substantial evidence.

In making the RFC determination, the ALJ gave substantial weight to the consultative psychological evaluation completed by Cara Kriehn De Roeck, LPE-I on December 21, 2009.[24] Jones's full scale score on the Wechsler Adult Intelligence Scale - IV was 72.[25] This indicates that Jones's overall intellectual functioning is within the borderline deficient range.[26] However, during the evaluation, De Roeck noted that Jones was "attentive," "stayed on task," "able to understand instructions,"

---

[23]*See Hulsey v. Astrue*, 622 F.3d 917, 925 (8th Cir. 2010) (ALJ's hypothetical asking the VE to assume "work of an unskilled nature involving only superficial interpersonal contact" adequately captured the consequences of the claimant's mental impairments, including borderline intellectual functioning).

[24]SSA record at p. 199.

[25]*Id.* at p. 200.

[26]*Id.*

and "did all that was asked of her."[27] Jones "remained focused and diligent to the task at hand."[28] De Roeck found that "[t]here do not appear to be significant cognitive limitations that would impede upon [Jones's] overall ability to carry out activities of daily living."[29] Further, "she has a number of functional skills that could be applied to a work place setting."[30] During the evaluation Jones's "attention and concentration were good."[31] Additionally she was able to "communicate effectively with the examiner" and "complete many tasks given extra time."[32] Although she was a "moderately slow worker," she was "persistent."[33] There was no evidence of mental retardation.[34]

The ALJ gave some weight to the opinions of the state agency non-examining physicians, Drs. Kay Cogbill and Susan Schaefer.[35] In the January 6, 2010, Mental

[27]*Id.* at p. 199.

[28]*Id.* at p. 201.

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Id.* at p. 202.

[35]*Id.* at p. 20.

Residual Functional Capacity Assessment, Dr. Cogbill found that the medical evidence of record supports a diagnosis of depression nos and borderline intellectual functioning.[36] Dr. Cogbill concluded that Jones "is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment . . . ."[37] [38] In her May 17, 2010, Case Analysis, Dr. Schaefer reviewed all the evidence and confirmed Dr. Cogbill's January 6, 2010, evaluation.[39]

Although Jones was also evaluated by Dr. Sam Hester,[40] the ALJ did not give controlling weight to Dr. Hester's opinion because it was not supported by the weight of substantial evidence and had internal inconsistencies. For example, although Dr. Hester noted that he "would be surprised if [Jones] does not test out in the mild retardation range," he found that Jones did not appear to be functioning within or near the mentally retarded range.[41]

---

[36]*Id.* at p. 24.

[37]*Id.*

[38]It appears that some language is missing from this page in the record. Neither party, however, has identified any issue stemming from the omission.

[39]SSA record at p. 204.

[40]*Id.* at p. 190.

[41]*Id.* at p. 195.

The ALJ also noted Jones's daily activities that are supported by written evidence and Jones's testimony.[42] Jones testified that she has five children living in her home.[43] Three are her biological children and two are her husband's children from a previous relationship.[44] Jones takes care of the children, cooks, does laundry, drives a car, shops for her family, and takes the children to school and ball practice.[45] Jones is the primary caregiver for the younger children.[46] The November 6, 2009, Function Report confirms these activities.[47] The Report also states that Jones can tend to her own personal care, visits with family three times a week, and has no problems getting along with family, friends, neighbors and authority figures.[48]

Jones worked in 2004 and 2005 as a farm helper, earning $38,889 in 2004 and $41,769 in 2005.[49] Jones is not currently on any prescription medications to address her impairments and she is not undergoing any treatment. Indeed, she never sought

---

[42]*Id.* at pp. 16 & 18.

[43]*Id.* at p. 245.

[44]*Id.*

[45]*Id.* at pp. 247 & 252.

[46]*Id.* at p. 252.

[47]*Id.* at p. 146.

[48]*Id.* at pp. 146-152.

[49]*Id.* at p. 77.

treatment or medical advice regarding her depression and borderline intellectual functioning. The only medical records addressing these issues are those generated by the state's consultative and non-examining physicians.[50] Apart from these records, the only other medical evidence consists of treatment notes from appointments related to Jones's pregnancies.[51] Although Jones maintains that she did not seek medical treatment due to the cost, the record establishes that she sought medical treatment when necessary for her pregnancies. The record further reflects that she has not taken steps to get discounted or free treatment. Jones's claims of financial hardship carry very little weight.[52]

A reasonable mind would accept the evidence as adequate to support the determination that Jones can perform the full range of work at all exertional levels but with the following non-exertional limitations: interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote, with few variables and little judgment; and supervision required is simple, direct and concrete.

---

[50]*Id.* at pp. 22, 190, 199, 204 & 216.

[51]*Id.* at pp. 158-189.

[52]*See Murphy v. Sullivan*, 953 F.2d 383, 386–87 (8th Cir.1992) (finding that ALJ properly rejected a claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of lack of finances).

The ALJ's RFC determination is supported by substantial evidence.

Following the RFC determination, the ALJ held that Jones can perform her past relevant work, both as actually performed and as generally performed, as a farm helper.[53] Although the ALJ was not required to, the ALJ sought the opinion of the VE as to whether Jones could perform her past relevant work.[54] The ALJ testified that Jones can perform her past relevant work as described by Jones.[55] Presented with a properly phrased hypothetical, as discussed below, the VE also testified that, in the alternative, Jones can perform the jobs of house cleaner or motel maid.[56] "Testimony from a vocational expert based on a properly-phrased hypothetical constitutes substantial evidence."[57] The ALJ's determinations with respect to Jones's ability to perform past relevant work and other jobs in the economy are supported by substantial evidence.

**VE hypothetical.** Jones asserts that the ALJ erred in failing to include in the hypothetical presented to the VE Jones's borderline intellectual functioning

---

[53]SSA record at p. 20.

[54]*Id.* at p. 255.

[55]*Id.*

[56]*Id.* at pp. 255-256.

[57]*Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001).

11

diagnosis. Jones is mistaken. The ALJ presented the following hypothetical to the VE

regarding past relevant work:

> ALJ: All righty. Assuming there's [an] individual [who] has the same age, education, work experience as the claimant, and considering the impairments; there are no exertional limitations, but based on the diagnosis of mood disorder and *borderline intellectual functioning* [INAUDIBLE] [the] individual has the ability to perform work where interpersonal contact incidentally and the complexity of tasks learned and performed by rote, any variables, including judgment, which seem to require sing [sic] [INAUDIBLE]. This individual performing the claimant's past work as performed by the claimant or as performed in the local, regional or national economy.

> VE: Yes, sir. I think that a good past work would be possible as described by claimant.

> ALJ: The individual's [sic] performing the other jobs that exist in the local, regional or national economy?

> VE: Yes, sir, there are some jobs, such as housecleaner or motel maid. These are unskilled positions SVP of 2. They are in the Light Exertional Category, but they satisfy the other variables that are expected in the hypothetical. Nationally there is [sic] approximately 400,000 of these positions. On a regional basis there's approximately 75,000, and in the state of Arkansas there's approximately 5,000. It's DOT number is 323.687-014.[58]

Accordingly, Jones's argument fails.

**Conclusion.** Substantial evidence supports the ALJ's decision. The ALJ made

no legal error. For these reasons, the court DENIES Jones's request for relief (docket

---

[58]SSA record at pp. 255-256 (emphasis added).

entry # 2) and AFFIRMS the Commissioner's decision.

It is so ordered this 20th day of August, 2014.


_____
UNITED STATES MAGISTRATE JUDGE